513

Pennsylvania Crime Commission Subpoena.

Argued May 21, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

514

*Harvey L. Anderson*, with him *Anthony D. Pirillo, Jr.*, for appellants.

*Alexander Kerr*, Deputy Attorney General, with him *Israel Packel*, Attorney General, for Pennsylvania Crime Commission, appellee.

OPINION BY MR. JUSTICE NIX, September 19, 1973:

The instant controversy arose during the Pennsylvania Crime Commission's (hereinafter cited as Commission) investigation into charges of widespread official corruption within the Philadelphia Police Department and an evaluation of the law enforcement services being rendered by that body to the citizens of the City of Philadelphia. Pursuant to these activities on September 11, 1972, the Commission served a subpoena duces tecum upon the Philadelphia Commissioner of Police, Joseph F. O'Neill (hereinafter cited as Police Commissioner).

On motion of the Police Commissioner, a judge of the Court of Common Pleas of Philadelphia County stayed the Commission's proceedings pending a decision on a motion to quash the subpoena. On the same date, the same court entertained an action in equity brought by Paul Taylor, a disability pensioner; Thomas Garvey, an active duty policeman; Frank Levins, a retired policeman; and the Fraternal Order of Police by Charles

Gallagher, its President, for themselves and other similarly situated persons seeking a restraining order against the Police Commissioner to prevent his compliance with the mandate of the subpoena.[1] The court granted ex parte the restraining order. The Commission responded by petitioning this Court for a writ of prohibition against the judge below and the entire Court of Common Pleas of Philadelphia County. In an order dated October 12, 1972, signed by Mr. Chief Justice JONES, this Court issued a rule to show cause upon the judge and the Court of Common Pleas of Philadelphia County and ordered a stay of proceedings until further action by this Court.

Also, on October 12, 1972, the Commission instituted the present action to enforce its subpoena in the Commonwealth Court. At the direction of this Court the Commonwealth Court proceeded with a hearing,[2] and on December 12, 1972, entered an order directing the production of the requested documents subject to certain restrictions as to their use by the Commission. Alleging the denial of an opportunity to participate in the action before the Commonwealth Court, the present appellants petitioned this Court for relief. On February 5, 1973, this Court remanded the cause to the Commonwealth Court with the direction that they: (a) determine whether the appellants were real parties in interest and had standing; and (b) if it was decided that appellants possessed standing, to allow them a hearing

---

[1] Although this is a cross appeal in which the Commission is appealing from a portion of the Commonwealth Court's Order and Taylor, Garvey, Levins and Gallagher are appealing from a different part of that order we will nonetheless refer hereinafter to the latter group as the appellants for the sake of clarity.

[2] In these proceedings the present appellants were not a party nor did they at that time attempt to intervene in the action before the Commonwealth Court. There was a factual dispute as to whether they had knowledge of the proceedings in the Commonwealth Court.

upon the merits of the controversy. Subsequently, the Commonwealth Court ruled in favor of the appellants on the question of standing and against them on the merits. It is from the adverse decision upon the merits that the appellants now appeal. The Commission filed a cross appeal challenging the Commonwealth Court's finding of standing.

Initially, appellants raise the issue of whether the Commonwealth Court had jurisdiction over the instant enforcement proceedings. They argue that while the Commission ordinarily would be entitled to choose whether to seek enforcement of a subpoena in either the Commonwealth Court or a Court of Common Pleas, *Pennsylvania Crime Commission Petitions,* 446 Pa. 152, 285 A. 2d 494 (1971), in the instant case, because of the pending proceedings in the Philadelphia Court of Common Pleas, the Commission was required to proceed in the Common Pleas Court. This argument is without merit.

Preliminarily, we note that appellants' motion to quash the subpoena in the Common Pleas Court was improper. Appellants cannot contest the validity of the subpoena until the Commission invokes enforcement procedures in either the Courts of Common Pleas or the Commonwealth Court. This is so because, unlike a judicial subpoena, the Crime Commission[3] is not given power to enforce compliance. Therefore, individuals are not placed in the dilemma of having to disobey the Commission's subpoena at their peril in order to contest its validity.[4] Failure to comply is not punishable

---

[3] The Crime Commission Act, Act of July 31, 1968, P. L. 754, §3, 71 P.S. §307-7 (Supp. 1973-74), *amending* the Act of April 9, 1929, P. L. 177, §923, empowers the Commission to issue subpoenas requiring witnesses to appear before the Commission with regard to any investigation which the Commission may conduct in accordance with its enumerated powers.

[4] Appellants' reliance on *Annenberg v. Roberts,* 333 Pa. 203, 2 A. 2d 612 (1938), is misplaced. In *Annenberg,* it was *not* necessary

by fine or imprisonment unless it continues after a court has ordered compliance. *See Cathcart v. Crumlish*, 410 Pa. 253, 189 A. 2d 243 (1963); *Alpha Club of West Philadelphia v. Pennsylvania Liquor Control Board*, 363 Pa. 53, 68 A. 2d 730 (1949).

The legislature in enacting the Crime Commission Act, *supra* note 3, created a specific statutory remedy for the Commission to pursue when an individual refused to obey a Commission subpoena. Section 307-7(9) provides that "upon failure of any person, so ordered to testify or to produce evidence, the commission may invoke the aid of any Court of Common Pleas of the county wherein the person is summoned to appear or the county wherein the person is served with a subpoena."[5] This procedure does, of course, allow any party with standing to contest the subpoena when they are called before the court.

Until the Commission invokes the aid of a court to enforce compliance with its subpoenas, the court is without jurisdiction in the matter. To hold otherwise would be to ignore the obvious possibility that the Commission may elect not to enforce its subpoena. Until

to obtain a court order commanding the parties to obey before they were subject to penalties provided in the applicable statutes. Here, the Commission cannot enforce its own subpoena.

[5] Since the enactment of the Appellate Court Jurisdiction Act of July 31, 1970, we have held that the Commonwealth Court has concurrent subpoena enforcement power. In *Pennsylvania Crime Commission Petitions, supra*, we stated: "It is manifest to us that the legislature intended by paragraph (b) [of section 401 of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P. L. 673, 17 P.S. §211.401(b) (Supp. 1973-74)'] to make the jurisdiction of the Commonwealth Court concurrent with the jurisdiction of the courts of common pleas in any action or proceeding in which the Commonwealth is the moving party. Since the courts of common pleas have subpoena enforcement powers under the Crime Commission Act, *supra*, it follows that the Commonwealth Court now has concurrent enforcement power under the same Act." 446 Pa. at 156, 285 A. 2d at 496-97.

the decision is made by the Commission to seek enforcement the subpoena is no more than an invitation to appear which can be ignored without peril by the recipient. Therefore, the premature initiation of equitable proceedings by the appellants is in effect a nullity and it is incapable of divesting the Commission of its legal right to elect to proceed to seek enforcement in the forum of its choice as provided under the statutes.[6] Accordingly, we believe that jurisdiction was properly assumed by the Commonwealth Court.

Appellants successfully argued below that they were entitled to intervene. They argue in support of this finding that the records sought to be obtained under the challenged subpoena consist of the personal and confidential records of them as individuals and members of a class who have a substantial and particular interest in the subject matter of the action. Further, they stress that the Police Commissioner is merely the custodian of these records and that in any action seeking disclosure of the information contained therein they are the real parties in interest.[7] Illustrative of their peculiar interest in avoiding the indiscriminate disclosure of the information contained in the requested documents, the appellants cite that the exposure of their pictures, names, addresses, and badge numbers could lead to reprisals by persons whom they had arrested during the course of their employment. They also note that the requested information would contain a record of infractions that they may have committed and for which they

---

[6] Our Order of October 12, 1972, only stayed those proceedings then pending in the Common Pleas Court of Philadelphia County. It did not affect the legal right of the Commission to invoke enforcement procedures.

[7] Appellants do not, however, allege that the interest of the Police Commissioner is in any way antagonistic to theirs. Indeed, based upon the instant record such a contention would be without merit.

have already received appropriate disciplinary action. Release of this information at this time, it is argued, would serve only to cause unnecessary embarrassment and in the case of the former employees, create unnecessary problems with reference to their present employment. The appellants also contend that the release of these requested documents would amount to a breach of a number of their constitutional rights and that only through intervention would they be able to assert these rights.

We note that an enforcement proceeding before the Commonwealth Court is an original action, *Pennsylvania Crime Commission Petitions,* 446 Pa. 152, 285 A. 2d 494 (1971), and under Rule 117 of the Commonwealth Court, the Rules of Civil Procedure apply in original actions. Thus, whether or not appellants should have been permitted to intervene in this subpoena enforcement proceeding depended upon whether they qualified as intervenors under Pa. R. C. P. 2327, which provides:

"At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if

"(1) the entry of a judgment in such action or the satisfaction of such judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered; or

"(2) such person is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof; or

"(3) such person could have joined as an original party in the action or could have been joined therein; or

"(4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action."

Clearly, appellants are unable to qualify under subsections (1) through (3). No judgment is entered in a subpoena enforcement action. The court will merely enforce an interim procedural order, imposing no civil or criminal liability upon the individuals seeking to intervene. Also, since there is no "property" now in the custody of the court, none of the appellants will be "adversely affected by a distribution or other disposition of property in the custody of the court. . . ." Nor could the appellants have joined as an original party in the action to enforce the subpoena, or have been joined therein, since they do not have actual custody of the documents being subpoenaed. The documents involved are physically possessed by the Philadelphia Police Department.

Consequently, appellants' right to intervene must fall within the provisions of subsection (4) of Pa. R. C. P. 2327. Appellants contend that the outcome of the subpoena enforcement action "may affect [a] . . . legally enforceable interest . . ." which they have in the proceedings. The Commission, argues to the contrary that the appellants lack standing to intervene in the judicial enforcement of the Commission's subpoena because they have made no showing at all of any "legally enforceable interest" in the requested documents.

In determining what constitutes a sufficient interest to intervene in this type of proceeding we recognize that "the exact boundaries of the 'legally enforceable interest' limitation [of Pa. R. C. P. 2327 (4)] are not clear. It owes its origin to the desire of the courts to prevent the curious and meddlesome from interfering with litigation not affecting their rights. The result is a flexible although uncertain rule whose application in a given case calls for the careful exercise of discretion and a consideration of all the circumstances involved." 3 Goodrich-Amram, Standard Pennsylvania Practice §2327-7 (footnote omitted); see *Pennsylvania*

*Railroad Company v. Hughart,* 422 Pa. 615, 222 A. 2d 736 (1966). Here, we are not convinced that the interest asserted by appellants justified the lower court's granting intervention.

Although they may have no proprietary interest in the information sought, appellants claim that a "legally enforceable interest" of theirs is involved because the records might contain incriminating evidence against them. In effect, appellants' desire to intervene is grounded upon the fact that production of the requested documents will facilitate an investigation having a general purpose to which they object. In our view, an individual's general interest in avoiding investigation does not, standing alone, afford him standing to object to the enforcement of a subpoena issued to a third party. Such a general interest is not of sufficient magnitude to allow intervention.

Paramount in our holding that appellants are not entitled to intervene is the fact that the Pennsylvania Crime Commission does not adjudicate or make any determinations of guilt or innocence. It is solely an investigative body created to gather information concerning improper criminal activities in this Commonwealth and to make recommendations to governmental and law enforcement agencies.[8] *Dixon v. Pennsylvania Crime*

---

[8] The statutory authority creating the instant Commission vested it with the responsibility of conducting investigations into, and to make recommendations concerning:

"(1) . . . the causes of crime and delinquency, measures for their prevention, the adequacy of law enforcement and the administration of justice.

"(2) . . . standards . . . for actions which may be taken by the State and local governments to prevent, reduce and control crime and increase respect for law. . . .

"(3) . . . all crime generally, and [the Commission] shall have the power to investigate specifically but not limited to any relationship between any combination of persons involved in the commission of crimes on one hand, and any goverment or political unit. . . .

*Commission,* 347 F. Supp. 138 (M.D. Pa. 1972) ; *Pennsylvania Crime Commission v. Nacrelli,* 5 Pa. Commonwealth Ct. 551 (1972). If we were to permit individuals to intervene to challenge the validity of a subpoena issued to a third party simply because some of the materials sought *might* implicate said individuals or the exposure of such information *could* provide the source of future embarrassment to them, we would be sanctioning procedures which would subject the Commission to an unreasonably burdensome intervention which would in effect prevent the Commission from effectively performing its statutorily mandated duties. To distort the meaning of a "legally enforceable interest" to include such a nebulous interest would establish an unjustified emphasis upon the individual's right and ignore the State's interests in conducting investigations of this nature.

In this area our focus must always be directed toward obtaining a balance between the protection of the rights of the individual and the avoiding of unnecessary restraint upon the State in the performance of its legitimate governmental purposes. Such a balance would be frustrated if we unreasonably emphasize or deprecate either interest. In the present record, it is clear that the alleged harm is at best conjectural. Admittedly, it will not flow as a direct consequence of the proceedings before us,[9] but rather if it does in fact oc-

---

"(4) . . . all fields of organized or syndicate crime.

"(5) . . . continued research and planning to improve the quality of criminal justice." Crime Commission Act, Act of July 31, 1968, P. L. 754, §3, 71 P.S. §307-7(1)-(5) (Supp. 1973-74), amending the Act of April 9, 1929, P. L. 177, §923.

[9] Appellants do argue that their reputations in the community will necessarily be harmed should the requested documents be disclosed to the Commission. However, the flaw in this argument is that the appellants erroneously equate *disclosure of the documents* to the Commission with public disclosure. The Commonwealth Court has specifically directed that release of the documents to the public

cur it would be in connection with *other proceedings* that may at some future time be instituted as a result of the information obtained. It also must be remembered that if these subsequent proceedings become an actuality the appellant then would be provided ample opportunity to present any objections to the use of said information. *Cf. Hannah v. Larche,* 363 U.S. 420 (1960).[10]

---

will not be permitted without a court order. The December 12, 1972 Order of the Commonwealth Court [In re: The Petition of the Pennsylvania Crime Commission For an Order to Joseph F. O'Neill, Commissioner of the Philadelphia Police Department, To Produce Documentary Evidence, No. 987, C. D. 1972.] provides in pertinent part: "The documentary material produced in compliance with this order shall be used by the petitioner for investigative purposes only and none of the contents thereof shall be disclosed to any person other than authorized employees of the Pennsylvania Crime Commission, unless otherwise ordered by this court for good cause shown." This directive of December 12, 1972 order is not affected by our disposition of the instant appeal, which is from the Commonwealth Court's Order of April 19, 1973.

[10] In *Hannah,* the Supreme Court of the United States, in rejecting a contention that the procedures provided by the Federal Commission on Civil Rights did not comport with the requirements of due process, made the following observation which is relevant to our discussion:

"Yet, the respondents contend, and the court below implied, that such procedures are required since the Commission's proceedings might irreparably harm those being investigated by subjecting them to public opprobrium and scorn, the distinct likelihood of losing their jobs, and the possibility of criminal prosecutions. That any of these consequences will result is purely conjectural. There is nothing in the record to indicate that such will be the case or that past Commission hearings have had any harmful effects upon witnesses appearing before the Commission. However, even if such collateral consequences were to flow from the Commission's investigations, they would not be the result of any affirmative determinations made by the Commission, and they would not affect the legitimacy of the Commission's investigative function.

"On the other hand, the investigative process could be completely disrupted if investigative hearings were transformed into trial-like proceedings, and if persons who might be indirectly af-

Accordingly, we hold that appellants' attempt to intervene in the enforcement of the subpoena served upon the Police Commissioner should have been refused. In reaching this determination we are mindful of the Supreme Court's recent refusal to allow intervention in judicial enforcement proceedings by a taxpayer who sought to challenge an Internal Revenue Service summons directed to his former employer and to his former employer's accountant. *Donaldson v. United States*, 400 U.S. 517 (1971). The Court concluded that the court below did not abuse its discretion in denying the motion to intervene because the taxpayer's interest in the records requested was not of sufficient magnitude to permit intervention. The Court was concerned that were it to "hold otherwise, as he [Donaldson] would have us do, we would unwarrantedly cast doubt upon and stultify the Service's every investigatory move", 400 U.S. at 531, because the interest of the taxpayer seeking to intervene was "nothing more than a desire . . . to counter and overcome Mercurio's [the accountant's] and Acme's [the employer's] willingness, under summons, to comply and produce records." *Id.*

Having concluded that Pa. R. C. P. 2327 fails to provide a basis for appellant's claim for intervention, we hold that the court below erred in finding that they had the right to intervene.[11]

---

fected by an investigation were given an absolute right to cross-examine every witness called to testify. Fact-finding agencies without any power to adjudicate would be diverted from their legitimate duties and would be plagued by the injection of collateral issues that would make the investigation interminable. Even a person not called as a witness could demand the right to appear at the hearing, cross-examine any witness whose testimony or sworn affidavit allegedly defamed or incriminated him, and call an unlimited number of witnesses of his own selection. This type of proceeding would make a shambles of the investigation and stifle the agency in its gathering of facts." 363 U.S. at 442-44 (footnotes omitted).

[11] "Reading Rule 2329 in conjunction with Rule 2327, which describes the classes of persons who may be permitted to intervene,

The order of the Commonwealth Court dated April 19, 1973, directing Joseph F. O'Neill, Commissioner of the Police Department of the City of Philadelphia to obey the subpoena of the Pennsylvania Crime Commission dated September 22, 1972, is affirmed for the reasons stated herein. The stay of proceedings granted by this Court on October 12, 1972 is vacated.

Mr. Justice MANDERINO would affirm based on the opinion of the court below.

the effect of Rule 2329 is that if the petitioner is a person coming within one of the classes described in Rule 2327, the allowance of intervention is not discretionary, but is mandatory, unless one of the grounds for refusal of intervention enumerated in Rule 2329 is present. *Similarly, if the petitioner does not show himself to be within one of the classes described in Rule 2327, in so far as he seeks intervention under the Rules of Civil Procedure, intervention must be denied, and this irrespective of whether any of the grounds enumerated by Rule 2329 exist.*" 2 Standard Pennsylvania Practice 460 (emphasis added) (footnotes omitted).