489 A.2d 182

**In re PETITION FOR ENFORCEMENT OF SUBPOENAS TO JOHN DOE CORPORATIONS A, B, C, D AND E.**

Supreme Court of Pennsylvania.

Argued Oct. 30, 1984.

Decided March 12, 1985.

138

140

_____

Mark A. Aronchick, Philadelphia, for appellant.

Joan Weiner, St. Davids, Martin Heckscher, Philadelphia, for Pa. Crime Commission.

Robert A. Graci, Deputy Atty. Gen., Harrisburg, for Com. of Pa.

Before NIX, C.J., and FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.[*]

This case is before us on our grant of the captioned corporations' application for assumption of plenary jurisdiction. That application was filed after Commonwealth Court refused to dismiss the Pennsylvania Crime Commission's petition for enforcement of subpoenas *duces tecum*. The Commission had issued and served the subpoenas upon the corporations in connection with an investigation it was conducting. As a corollary to its order refusing the corporations' motion to dismiss the petition for enforcement, Commonwealth Court struck their petitions to review the issuance of the subpoenas holding them not ripe for review under our decision in *Re: Pennsylvania Crime Commission*, 453 Pa. 513, 309 A.2d 401 (1973).[1]

[*] This case was reassigned to this writer on December 5, 1984.

[1]. That order is the subject of a Notice of Direct Appeal the corporations filed at 110 E.D. Appeal Docket, 1984. See, 84 Pa.Commonwealth Ct. 234, 479 A.2d 655. Both cases were argued together. However, we are dismissing that appeal by separate order consistent with our decision here.

▮ Commonwealth Court, as the Commission conceded, correctly recognized that the new enforcement procedure the Legislature attempted to prescribe in Section 7 of the Act[2] reconstituting the Crime Commission failed the constitutional tests we set out in *Commonwealth ex rel. Chidsey v. Mallen*, 360 Pa. 606, 63 A.2d 49 (1949), to assure due process in compelling obedience to administrative subpoenas. However, it also correctly recognized that the subpoena power itself, set forth in Section 4(7) of the same Act, 71 P.S. § 1190.4(7), lay at the heart of the Legislature's intent in reconstituting an agency to investigate organized crime and corruption and provide the Legislature with a factual basis for legislation to control these problems. Lacking the power to prescribe procedural rules, Commonwealth Court sought to preserve the Commission's subpoena power by finding an alternative statutory enforcement procedure in Section 520 of the Administrative Code, Act of April 9, 1929, P.L. 177, 71 P.S. § 200. To do so, however, that court had to overlook the anomaly of ordering the Commission to return to basically the former procedure which the Legislature rejected when it adopted Section 7 of the 1978 Act reconstituting the Commission. We granted plenary jurisdiction to resolve this dilemma. After carefully considering the problem, with the aid of briefs and argument from the parties and the Attorney General,[3] we

2. Act of October 4, 1978, P.L. 876, § 7, 71 P.S. § 1190.7.

3. In support of the constitutionality of Section 7, the Attorney General has argued that the language of that section is analogous to the enforcement of summons procedure set forth in 26 U.S.C.S. § 7604(b) and, therefore, in conformity with the due process requirements of the United States Constitution under the United States Supreme Court's opinion in *Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964). Based on its analysis of the interdependent summons enforcement scheme in the Internal Revenue Code, 26 U.S.C. §§ 7210, 7402 and 7604, *Reisman* seems to us to require a meaningful opportunity to object to the substance of the subpoena before the contempt process begins. Unlike Section 7604(b) of the Internal Revenue Code, Section 7 of our Crime Commission Act does not explicitly call for such a hearing on the subpoena before the summoning judge prior to a finding of civil contempt. We are, therefore, unable to approve the procedure specified in Section 7 of our statute.

♦

believe the issue best resolved by exercising our power to make the procedural rules necessary for the judicial enforcement of the Commission's authority. We do so prospectively by adopting, on an interim basis, the concededly adequate procedure Commonwealth Court found in Section 520 of the Administrative Code.

The facts necessary to an understanding of this issue are set forth in the following extract from Commonwealth Court's majority opinion:

The Pennsylvania Crime Commission (Commission) served subpoenas upon John Doe Corporations A, B, C, D and E (Corporations) for the production of documents. The Corporations refused to comply with the subpoenas, and the Commission subsequently has petitioned this Court for the enforcement of the subpoenas. The Corporations have filed preliminary objections in the nature of a demurrer and a motion for a more specific pleading.

. . . . .

The Commission is an investigative agency which acts pursuant to the powers and duties conferred upon it by the Pennsylvania Crime Commission Act, Act of October 4, 1978, P.L. 876, 71 P.S. §§ 1190.1–1190.11 (Act). These include the power to issue subpoenas, Section 4(7) of the Act, 71 P.S. § 1190.4(7), and a provision for enforcement of subpoenas, Section 7 of the Act, 71 P.S. § 1190.7. These powers were the basis for the subpoenas served upon the five Corporations on November 9, 1983. The subpoenas commanded the production of various documents covering the period 1979 through the date of service.

The Corporations refused to comply with the subpoenas. Although ... Section 7 of the Act appears to provide that the Commission's subpoenas are self-executing, the Commission next sought the aid of this Court in enforcing its subpoenas.

. . . . .

The Corporations first object that Section 7 of the Act is unconstitutional in that it fails to provide a procedure

for court enforcement of the Commission's subpoenas as a prerequisite to a finding of contempt. Section 7 states:

> If any person subpoenaed pursuant to section 4(7) [of the Act] shall neglect or refuse to obey the command of the subpoena, any judge of the Commonwealth Court, upon request of the commission, and on proof of affidavit of service of the subpoena, payment or tender of any fees required and of refusal or neglect by the person to obey the command of the subpoena may issue a warrant for the arrest of said person to bring him before said judge, who is authorized to proceed against said person as for civil contempt of court.

The Commission acknowledges that the failure of the statute to provide an intermediate hearing before the Court on the substance of the subpoenas does not satisfy the requirements of due process.[1]

---

[1] The present statute is in contrast to the former statute, which provided that upon failure of a person to respond to a subpoena, the Commission could invoke the aid of the court for enforcement purposes. Section 3 of the Act of July 31, 1968, P.L. 754, 71 P.S. § 307–7(9), repealed by the Act of October 4, 1978, P.L. 876.

84 Pa. Commonwealth Ct. at 238, 479 A.2d at 657–58 (footnote in original).

Whatever the efficacy or propriety of a particular enforcement procedure, the subpoena power set out in Section 4(7) of the Act is central to the Crime Commission's reason for being. Again, in the words of the Commonwealth Court:

> It would be absurd to hold that the Commission is without a means of enforcing its subpoena power. An investigative commission without power to investigate obviously was not the legislative intent.

84 Pa. Commonwealth Ct. at 240, 479 A.2d at 658–59. Moreover, the general rule governing constitutional construction of statutes declares: "The provisions of every statute shall be severable." 1 Pa.C.S. § 1925.[4]

---

4. Section 1925 reads:
 The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or

■ Nevertheless, prior to the ratification of Article V of the 1968 Constitution, the defect in the Section 7 statutory procedure for enforcement of subpoenas might have brought the Section 4(7) substantive provision authorizing subpoenas within the exception to the general rule of severability, *i.e.,* "that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent." However, Article V, Section 10(c) of the 1968 Constitution removes any such difficulty. It confers upon this Court the power to make rules of procedure provided they "neither abridge, enlarge or modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose."

■ Since the subpoena power is central to the legislative purpose in creating and continuing the Crime Commission, we would be derelict in our constitutional duty if we failed to provide a constitutionally permissible procedure for judicial determination of the validity of individual subpoenas and the propriety of sanctions against individuals who disobey them. This Court will, therefore, exercise its power under Article V, Section 10(c) of our Pennsylvania Constitution to prescribe such judicial procedures as are necessary for the enforcement of the Commission's substantive right to issue subpoenas. It is appropriate for us to do so here in order to carry out the legislative intent of reconstituting the Commission with the subpoena power necessary to any effective investigating agency. We therefore suspend Section 7 and adopt Administrative Code Sec-

circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

tion 520. We, like Commonwealth Court, find that latter section constitutional as an interim procedure for the enforcement of the Commission's subpoenas.

 The interim adoption of Administrative Code Section 520 seems to us necessary and desirable in order to permit the Commission to continue functioning effectively pending further appropriate action by the Legislature, or this Court, with respect to the implementation of its subpoena power. However, because the power to adopt general rules of procedure, although given to this Court as the governing authority of the Judicial Branch by Article V, Section 10(c) of our Constitution, is in the nature of a legislative rather than a judicial power, it should, ordinarily, be exercised only prospectively. We will so exercise it here and accordingly require the Commission to begin anew by reissuing and serving those subpoenas appropriate and relevant to the purpose of its investigation. In the event of a subpoenaed witness's failure to respond, the Commission can then, if it wishes, seek Commonwealth Court's aid to enforce the dishonored subpoenas by a constitutionally proper procedure. That procedure will also preserve the appellants' due process right to a judicial test in Commonwealth Court of the validity of the subpoenas and their relevance to a properly authorized investigation of the Commission.

Plenary jurisdiction is relinquished and the record remanded to the Crime Commission for such further proceedings, consistent with this opinion, as may be appropriate.

PAPADAKOS, J., files a Concurring Opinion.

ZAPPALA, J., files a Dissenting Opinion.

LARSEN, J., did not participate in the consideration or decision of this case.

PAPADAKOS, Justice, concurring.

While I agree that Section 7 of the Pennsylvania Crime Commission Act, Act of October 4, 1978, P.L. 876, No. 169,

71 P.S. § 1190.1 et seq., is an unconstitutional enforcement procedure for subpoenas issued by the Pennsylvania Crime Commission, I disagree with that portion of the majority opinion which holds that in the absence of a valid enforcement procedure, we should promulgate enforcement rules and refer the matter to our Criminal Rules Committee. I also disagree with the majority's action in suspending an obviously unconstitutional provision.

In my view, Legislative enactments which do not pass constitutional muster are without validity and must be stricken because they are enactments beyond the Legislature's authority. To suspend a legislative enactment is only to interrupt, postpone, stay or delay its effect, but with an expectation or purpose of its resumption. (See *Black's Law Dictionary*, Fourth Edition, p. 1615). I can see no situation which would permit the resumption of an unconstitutional enactment and, therefore, believe that the majority establishes a dangerous precedent in suspending a patently unconstitutional statute. Is the majority, by its novel approach, sending a message to the Legislature that Section 7 will remain suspended until it is replaced by a new enforcement section? If that is their intent, they should clearly say so by the time honored practice of striking the unconstitutional section. But by suspending, the majority opens a Pandora's box of problems. Does the majority in the future plan to change the suspension and strike the statute and, if so, how will it accomplish that review?

Finally, if the majority can suspend, permanently or temporarily, unconstitutional legislation, can it also suspend constitutional legislation? Because I see the spectre of these problems arising from the unorthodox approach of suspending legislation, I would avoid these problems by simply striking Section 7, like any other unconstitutional provision.

Concerning the subpoena power, Section 4(7) of the Act vests the Commission with power:

to require the attendance and testimony of witnesses and the production of documentary evidence relative to any

investigation which the Commission may conduct in accordance with the powers given it . . .

The constitutionality of this provision is beyond dispute and is severable from other provisions found in the Act. The power conferred upon the Commission imposes upon anyone properly called the duty of appearing and testifying or producing documentary evidence unless properly excused. Because an act of the Legislature confers this power on the Commission, all citizens within the jurisdiction of the Commonwealth are bound to respect the legislative will as thus expressed and to yield obedience to the Commission acting within the ambit of its authority.

Included in the Legislature's express grant of power are such other powers as are necessarily or reasonably incident to the Commission's right to require the attendance of witnesses or the production of documentary evidence including the right to seek judicial aid in compelling the performance of a legally imposed duty. Without such a right, the duty to appear or produce documents becomes meaningless and the grant of power to the Commission a hollow grant. Moreover, the right to seek judicial aid to compel performance of the duty created by statute is implicitly tied to the Commission's ability to implement its duties and functions.

In my opinion, the right to seek judicial aid is implied in the power to subpoena and is separate from the question of the Legislature's chosen mode of enforcement.

I believe this view is in accord with general jurisdictional principles and "national" law at the present time. In *Wilmot v. Doyle*, 403 F.2d 811 (9 Cir.1968), the argument was made that Federal District Courts had independent equitable power to enforce NLRB subpoenas, while an NLRB hearing was still in progress, upon application of parties to the proceeding in the name of the trial examiner *ex. rel.* It was argued to be the case that "where there are no available remedies under the specific terms of the Act or where those remedies are not adequate to protect statutory and constitutional rights, the equity power of the United States District Court has been invoked under 28 U.S.C. 1337."

The Ninth Circuit rejected this argument, but only on the grounds that an adequate remedy at law existed. The parties seeking enforcement of the subpoenas were required to wait until all administrative proceedings were concluded before appealing under the relevant statutes to the Federal Courts. Essentially, therefore, the appropriate administrative procedures had not been exhausted (or perhaps the controversy was not ripe for review), but nevertheless, the Ninth Circuit appeared, inferentially, to recognize the District Court's inherent equitable powers in this area.

A review of an excerpt from the late Professor Chaffee's book (actually a compilation of a series of lectures at the University of Michigan) entitled "Some Problems of Equity" also lends support to this view. Chaffee seems to be arguing that a state trial court has inherent equitable power or jurisdiction over virtually all subject-matter. A court may, however, sometimes decide a case wrongly or be in disregard of sound principles of decision-making. On this theory, it is hard to see what sound principles would lead the majority to decline to afford the Commission a remedy in equity. The equitable maxim to the effect that "equity will not suffer a wrong without a remedy" seems relevant. See Pomeroy, Equity Jurisprudence (5th ed., 1941) Vol. II, § 363.

Pursuant to section 4(11) the Commission is empowered to perform all acts "necessary for the proper functioning of the Commission." Nothing is more necessary than the Commission's ability to seek judicial aid when statutorily imposed duties are being ignored or disobeyed. One of the functions of a court is to compel a party to perform a duty which the law requires of him and here, the courts are open to the Commission should it choose to seek aid in enforcing the duty to appear or produce documentary evidence.

Whether the Commission is entitled to the evidence it seeks, and whether the refusal to produce evidence is or is not a violation of a legally imposed *duty*, or in derogation of the rights of the Commission seeking to execute a power expressly granted by the Legislature, these are the distinct

issues between that body and the witness. And these issues are so presented that the judicial power is capable of acting on them. Of course, it is within the Legislature's discretion to choose a procedure for the enforcement of its statutes and it may employ any one or all of the modes appropriate to accomplishing the object of a power granted by it, but it may not deny all modes of enforcing its statutes, including access to the courts, because such a prohibition is not calculated to attain the object for which the Legislature is authorized to regulate on a particular subject. However, where the Legislature provides a remedy by which a right may be enforced, which remedy is not adequate, equity will afford relief in furtherance of justice. *Borough of Greentree v. Board of Property Assessment,* 459 Pa. 268, 328 A.2d 819 (1974); *Chamber of Commerce v. Torquato,* 386 Pa. 306, 125 A.2d 755 (1956); *Duquesne Light Company v. Upper St. Clair Township,* 377 Pa. 323, 105 A.2d 287 (1954); *Collegeville v. Philadelphia Suburban Water Company,* 377 Pa. 636, 105 A.2d 722 (1954).

It is true that equity jurisdiction in Pennsylvania has been regarded as reliant entirely upon statute, (see *Dohnert's Appeal,* 64 Pa. 311 (1870); *Calabrese v. Collier Township,* 430 Pa. 289, 240 A.2d 544 (1968)), but I do not read these cases as holding by implication or otherwise that equity cannot be invoked to enforce a statutory right where the statutory remedy is inadequate.

Since I find that equity has jurisdiction to enforce these subpoenas, there is no need for us to fashion new rules or to refer the matter to the Criminal Rules Committee for suggestions.

Surely the Legislature did not invest the subpoena power upon the Commission upon condition that the power be enforced unconstitutionally. In a practical way, the Legislature sought to avoid legalistic delays and bureaucratic red tape by granting to the Commission a private means of enforcement. This mode of enforcement has proved to be unconstitutional in that it deprives those subpoenaed of due process, and as such is wholly inadequate. Such is usually

the result of practical means of shortcutting constitutional guarantees. But the failure of this particular mode of enforcement does not destroy the Commission's underlying right to seek judicial aid. Even the majority recognizes that the Legislature conferred a substantive right upon the Commission when it granted to it the subpoena power. By virtue of our inherent right to enforce substantive rights and to settle disputes in issue between parties and to compel compliance of duties imposed by law, the judicial branch is competent to hear and decide the issues between these parties.

I would hold that the Commission, as a statewide agency, may apply to the Commonwealth Court using the three step procedure that we have required where a Commission seeks a court's aid to enforce the statutorily imposed duty of appearing before it to testify or produce documentary evidence, upon one who seeks to avoid that duty.

Accordingly, I would affirm.

ZAPPALA, Justice, dissenting.

I dissent and disassociate myself from the actions of the Majority of this Court to the farthest distance possible by means of the written word. I cannot subscribe to the unauthorized exercises of power underlying the Majority Opinion and Justice Papadakos' Concurring Opinion. The General Assembly has defined which governmental bodies may pursue contempt proceedings to enforce their subpoenas. We can no more engage in "rulemaking" which has the effect of permitting the Crime Commission to enforce subpoenas by way of contempt proceedings in the courts, than can the General Assembly enact legislation determining whether certain actions meet the requirements of due process. If the legislature had the power to enact Administrative Code § 520, giving agencies authority to bring, and courts jurisdiction to hear, cases involving disobedience to subpoenas issued by certain agencies as contempt cases, this Court cannot have the power to accomplish the same

end by way of "rulemaking" or by exercising our "equitable" powers.

On November 10, 1983, the Pennsylvania Crime Commission ("Commission") served legal counsel of each of the Appellants with a subpoena *duces tecum* for books and records in connection with an investigation into the relationship between the coal industry and organized crime. These subpoenas required delivery of the subpoenaed materials on November 17, 1983. Rather than comply with the subpoenas, the Appellants filed a Petition for Review in Commonwealth Court on November 16, 1983, since amended, seeking to quash the subpoenas. In these petitions, the Appellants alleged, *inter alia*, that Section 7 of the Pennsylvania Crime Commission Act, Act of October 4, 1978, P.L. 876, No. 169, 71 P.S. § 1190.1 et seq., (hereinafter referred to as "Act"), was unconstitutional in that it violated the due process rights of those subpoenaed by the Commission; that the subpoenas, on their face, were overly broad and fraudulently misrepresented the powers and authority of the Commission; that the Commission had no authority to conduct the subject investigation; and that the Commission failed to demonstrate how the subpoenaed records were reasonably related to an investigation properly within the jurisdiction of the Commission. Thereafter, on December 8, 1983, the Commission filed a Petition for Enforcement of each subpoena. Both the Appellants and the Appellee filed preliminary objections to the other parties' petition. The Commonwealth Court consolidated the entire matter for argument *en banc.*

Commonwealth Court issued its Order and Opinion on July 30, 1984 sustaining the preliminary objections of the Commission, overruling the preliminary objections of the Corporations and directing them to answer the Commission's Petitions for Enforcement, and dismissing the Corporations' Amended Petition for Review. On August 3, 1984, the Commonwealth Court denied the Appellants' request for a stay of its order and for certification of the matter for appeal to this Court. Thereafter, the Appellants filed an

appeal to this Court from the Order of the Commonwealth Court dismissing the Petition for Review, a petition for review of the interlocutory matters, and a petition requesting that we assume plenary jurisdiction. On September 19, 1984, we granted the petition for plenary jurisdiction.

In the proceedings below, the Commission conceded, and the Commonwealth Court held, that Section 7 of the Act was unconstitutional on its face and violative of due process for failure to provide an intermediate hearing before the court on the substance of the subpoenas. Nevertheless, the court found that the Commission could use the same "means of enforcement which is granted generally to administrative agencies of the Commonwealth" by Section 520 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 200.

In this appeal, the Appellants argue not only that Section 7 of the Act is unconstitutional, but also that the subpoena enforcement provisions of the Administrative Code do not apply to the Pennsylvania Crime Commission. That enforcement mechanism, it is argued, was available to the previous Commission but was specifically rejected by the General Assembly in the 1978 Act which abolished the former Commission and created the present Commission. The Appellee urges the correctness of the decision below. The Attorney General has been invited to intervene and has filed a brief and argued in support of the constitutionality of the statute. Pa.R.A.P. 521(b).[1]

We have often said that an Act of the General Assembly will not be declared unconstitutional unless it clearly, palpa-

---

1. It is noted that in the proceedings below, despite having been advised by the Corporations that a constitutional question regarding the powers of the Commission would be raised, the Attorney General declined to intervene and left argument of the issue to counsel for the Commission. Of course, the Commission does not possess the power to determine the constitutionality of enabling legislation, *see Borough of Green Tree v. Board of Property Assessments,* 459 Pa. 268, 328 A.2d 819 (1974). Nevertheless, it was not until well after this Court's invitation to intervene, and shortly before the scheduled argument, that the Attorney General appeared for the first time to argue the constitutional question.

bly, and plainly violates the Constitution, and any doubts are to be resolved in favor of its constitutionality. Furthermore, the burden of proving a statute unconstitutional is on the party alleging the constitutional infirmity. I find that here that burden has been met.

The Commonwealth Court correctly noted that "[h]istorically, the courts of Pennsylvania have held that a three-step procedure is required in order to find a person guilty of contempt where an agency has issued a subpoena; *i.e.,* service of the subpoena; a hearing before a court upon the person's failure to comply with the subpoena *and a court order for compliance;* and a court finding of contempt for failure to comply with the court's order." 84 Pa.Cmwlth. 234, 238, 479 A.2d 655, 658 (1984) (Emphasis added).

Although this Court has never found it necessary to determine precisely what procedures are constitutionally *required* for valid enforcement of an administrative subpoena, several cases in which particular methods of enforcement were challenged have shed light on this question. In *Commonwealth ex rel. Chidsey v. Mallen,* 360 Pa. 606, 63 A.2d 49 (1949), the Attorney General had sought enforcement of subpoenas issued pursuant to Section 520 of the Administrative Code, 71 P.S. § 200. His petition for a rule to show cause why the witnesses should not be punished for contempt of court alleged only that the witnesses had "failed to appear in person and to produce books ... in accordance with subpoena...." 360 Pa. at 615, 63 A.2d at 53. In affirming the order discharging the rule, we observed that "contempt of the investigators ... cannot by legislative fiat be transformed into a judicial judgment; due process must be observed." *Id.* We further intimated that a proper hearing before a court on the merits of the subpoena, and a failure of the witness to obey an order of court directing compliance with the subpoena, would be necessary before such a rule would be appropriate.

In *Pennsylvania Crime Commission Petitions,* 446 Pa. 152, 285 A.2d 494 (1971), we approved the procedure for initiating enforcement of subpoenas by way of petition for

rule to show cause why the witnesses should not be ordered to testify. It is significant that the Commission as constituted under the Act of 1968 was a "departmental administrative commission" within the Department of Justice and invested with the general powers and duties of such commissions pursuant to the Administrative Code of 1929. The Commission was, moreover, given a specific grant of authority to issue subpoenas, 71 P.S. § 307-7(7) (Supp.1971), and "[u]pon failure of any person so ordered to testify or to produce evidence, ... [to] invoke the aid of any court of common pleas of the county wherein the person is summoned to appear or the county wherein the person is served with a subpoena." 71 P.S. § 307-7(9) (Supp.1971). Reviewing this latter provision in *Pennsylvania Crime Commission Subpoena*, 453 Pa. 513, 309 A.2d 401 (1973), we found that "[t]he legislature in enacting the Crime Commission Act ... created a *specific statutory remedy* for the Commission to pursue when an individual refused to obey a Commission subpoena." 453 Pa. at 517, 309 A.2d at 404 (Emphasis added).

This specific statutory remedy was replaced with Section 7 when the General Assembly created the present Commission by the Act of 1978. Section 7 provides:

If any person subpoenaed pursuant to Section 4(7) [of the Act] shall neglect or refuse to obey the command of the subpoena, any judge of the Commonwealth Court, upon request of the commission, and on proof of affidavit of service of the subpoena, payment or tender of any fees required and of refusal or neglect by the person to obey the command of the subpoena may issue a warrant for the arrest of said person to bring him before said judge, who is authorized to proceed against said person as for civil contempt of court.

Simply stated, Section 7 permits the issuance of an arrest warrant on the bare assertion by the Commission that a subpoena has been served, fees have been tendered, and the witness has neglected or refused to obey the subpoena. The court is purportedly authorized to proceed as for civil

contempt of court in such a case, although the finding of contumacious conduct is solely within the discretion of the Commission, and the disobedience, if such it be, is to the agency's subpoena, not to an order of court. This is precisely the kind of transformation of "contempt of the investigators" into a judicial judgment by legislative fiat which we disapproved as a denial of due process in *Commonwealth ex rel. Chidsey v. Mallen.*

The Attorney General seeks to rescue the statute from a finding of unconstitutionality by arguing that the statute is worded in permissive, not mandatory, terms. Because the statute provides only that the court *"may* issue a warrant" and that the judge "is authorized" to proceed as for civil contempt, there is said to be sufficient leeway for a witness to assert, and for the court to accept, any reasons which might justify a refusal to comply. This argument is misdirected where the challenge is to the constitutionality of the statute on its face. The possibility that the Commission and the court *might* afford a person due process while purporting to act pursuant to Section 7 cannot salvage that section which does not, as written, comport with constitutional requirements.

Because the subpoena enforcement provision enacted by the legislature fails to comport with requirements of due process, the correctness of the Commonwealth Court's holding that the Commission may nevertheless enforce its subpoenas must be reviewed. Upon examination, the argument that the Pennsylvania Crime Commission, simply because it is a "commission", has subpoena powers pursuant to Section 520 of the Administrative Code of 1929, 71 P.S. § 200, proves too facile. Section 520 provides a general subpoena power for "[e]very administrative department, every independent administrative board and commission, every advisory board and commission, and the several workmen's compensation referees...." It further provides an enforcement mechanism where a witness refuses to obey such a subpoena, i.e., application "to any court of common

pleas within whose territorial jurisdiction the offense was committed" for a contempt proceeding.

Administrative Code Section 201, 71 P.S. § 61, lists the "executive officers", "administrative departments", and "independent administrative boards and commissions" who shall perform the executive and administrative work of the Commonwealth. It is noteworthy that the Pennsylvania Crime Commission does not appear in the list of "administrative departments"[2] or in the list of "independent boards and commissions".[3] Neither is the Commission one of the "administrative boards, commissions, and offices" placed within these several "administrative departments" by Administrative Code Section 202, 71 P.S. § 62, nor is it among the various "advisory boards and commissions" placed within the "administrative departments" by Administrative Code Section 203, 71 P.S. § 63.

The mere absence of the Commission from these lists is certainly not conclusive of the fact that the Commission does not share in the same general grant of powers as those government units which are listed. The Commission is not merely absent, however; it was purposefully removed from the list of departmental commissions by the Legislature in 1978. The former Pennsylvania Crime Commission, created by the Act of July 31, 1968, P.L. 754, No. 235, § 2, 71 P.S. § 179 (Adm.Code § 469), *repealed,* 1978, Oct. 4, P.L. 876, No. 169, § 12, was originally established as a "departmental

2. The administrative departments enumerated in 71 P.S. § 61 (Adm. Code § 201) (Supp.1984) are the Department of State, Department of Justice, Department of the Auditor General, Treasury Department, Department of Education, Department of Military Affairs, Insurance Department, Department of Banking, Department of Agriculture, Department of Transportation, Department of Health, Department of Labor and Industry, Department of Aging, Department of Public Welfare, Department of General Services, Department of Revenue, Department of Commerce, Department of Community Affairs and Department of Environmental Resources.

3. The independent administrative boards and commissions are the Pennsylvania Game Commission, Pennsylvania Fish Commission, State Civil Service Commission, Pennsylvania Public Utility Commission, the Pennsylvania Historical and Museum Commission and the Pennsylvania Securities Commission.

commission", chaired by the Attorney General, within the Department of Justice. It was thus possessed of the general powers and duties invested in all such commissions by the Administrative Code of 1929. *See Commonwealth v. Weitkamp,* 255 Pa.Super. 305, 317, 386 A.2d 1014, 1020 (1978), *allocatur denied,* July 20, 1978. This status was changed, however, by the 1978 Act which entirely repealed the prior acts authorizing a Crime Commission and created a new Commission. Transition provisions of a limited duration, added to the prior acts to govern the transfer of functions from the old commission to the new, along with other references in Title 71 to the Commission as an "independent agency", a category of governmental unit distinct from "departments, boards, [and] commissions", *see* Commonwealth Attorneys Act, Act of Oct. 15, 1980, P.L. 950, No. 164, § 101 to § 506, 71 P.S. § 732–102 (Supp.1984), lend further support to the inescapable conclusion that the Pennsylvania Crime Commission as presently constituted is no longer an administrative departmental commission within the scheme of powers and duties set out by the Administrative Code of 1929. It is, rather, an independent agency whose powers must be found solely and entirely within its own enabling legislation. For this reason, I would hold that the Commonwealth Court erred in finding "residual powers" of subpoena enforcement for the Commission in Section 520 of the Administrative Code of 1929.

Part of the Commonwealth Court's rationale for turning to the Administrative Code of 1929 after finding Section 7 to be unconstitutional was its determination that the grant of subpoena power in Section 4(7) was severable from the enforcement provision and that the legislature did not intend to confer a subpoena power which was enforceable only by the specific method outlined in Section 7. This reasoning turns the relevant rule of statutory construction on its head.

Section 1925 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1925, does indeed provide that "[t]he provisions of every statute shall be severable." The proper application of this severability rule is further detailed:

> If any provision of any statute ... is held invalid, the
> remainder of the statute ... *shall not be affected there-*
> *by, unless* the court finds that the valid provisions of the
> statute are so essentially and inseparably connected with,
> and so depend upon the void provision ... that it cannot
> be presumed the General Assembly would have enacted
> the remaining valid provisions without the void one; *or*
> *unless the court finds that the remaining valid provi-*
> *sions, standing alone, are incomplete and are incapa-*
> *ble of being executed in accordance with legislative*
> *intent.*

(Emphasis added.) The corollary of this rule that the
remainder *shall not* be affected *unless* certain conditions
are found is that the remainder *shall* be affected *if* those
conditions are found. Having determined that the enforce-
ment mechanism provided was invalid, the court was not
authorized to supply a valid mechanism in order to salvage
the subpoena power, on the assumption that the legislature
preferred the Commission have some enforceable subpoena
power rather than none. Pursuant to the rule of construc-
tion, because the grant of subpoena power "standing alone,
[is] incomplete and [is] incapable of being executed in ac-
cordance with the legislative intent," the grant of subpoena
power is also affected by the determination that the en-
forcement mechanism is invalid. Although it may have
been "obvious" to the Commonwealth Court that the "broad
intent was that the Commission should have power to
subpoena and an enforcement procedure for making that
power meaningful," 84 Pa.Cmwlth.Ct. at 239 n. 2, 479 A.2d
at 658 n. 2, it is for the legislature, not the courts, to
determine what enforcement procedures should be adopted.
In this regard it is noteworthy that the General Assembly
clearly understood the distinctions between the procedures
as is evidenced by the detailed, accepted method drafted for
the Commission to pursue a grant of immunity, 71 P.S.
§ 1190.6 (Supp.1974). Furthermore, as previously noted,
the legislature entirely repealed the prior specific statutory
remedy for a witness' refusal to obey a Commission subpoe-
na. Finally, the legislature has provided other governmen-

tal units with enforcement mechanisms other than contempt. *See e.g.*, 71 P.S. § 1285 (Water and Power Resources Board) (failure to give testimony or produce documentary evidence classified as misdemeanor punishable by fine up to $500 and/or imprisonment of one year). There is, therefore, no basis for an inference that the legislature was more concerned with a generally enforceable subpoena power than with the particular enforcement power attempted to be utilized here. Nor can it be inferred that this particular legislation having failed, the legislature would intend to apply the means of enforcement chosen by the Commonwealth Court and not another.[4] In accordance with the rules of statutory construction, therefore, the court was bound to hold that the subpoena power, as granted to the Commission by the Act of 1978, is invalid in its entirety.

Although it proceeds according to this same logic, the Majority "removes any difficulty" by usurping the power of the legislature and exercising it under the guise of this Court's Constitutional "power to prescribe general rules governing practice, procedure and the conduct of all courts ...," Const., Art. V, § 10. It attempts to bring the grant of subpoena power in Section 4(7) back within the scope of the severability rule by creating the elements necessary to prevent the finding that "standing alone, [the grant of subpoena power is] incomplete and [is] incapable of being executed in accordance with the legislative intent." This it does by purporting to merely adopt rules of procedure whereby the Commission could enforce its subpoenas.

Our rulemaking power is not unlimited. Such rules as we may prescribe are valid so long as they "neither abridge,

4. Although it is not within the purview of this Court to ascertain the intent of the General Assembly from its *inaction* on any particular matter, such an examination can be instructive where, as here, the argument is made that the legislature *would have intended* one result rather than another. In this regard, the Appellants have directed our attention to Senate Bill No. 995, Session of 1981, July 1981, *introduced but never voted upon*, which would have deleted Section 7 and substituted an enforcement procedure providing for a finding of contempt only after a hearing to determine whether a witness had disobeyed a court order directing him to comply with a Commission subpoena. Brief of Appellants at 11 n. 5.

enlarge or modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court...." Const., Art. 5, § 10. With respect to this constitutional limitation on our authority, however, the Majority dons the mask of Janus, acknowledging the limitation to the one side while simultaneously trying to circumvent it to the other.

Section 4132 of Title 42 of the Pennsylvania Consolidated Statutes provides that

The power of the several courts.of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:

(1) The official misconduct of the officers of such courts respectively.

(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

Act of July 9, 1976, P.L. 586, No. 142, § 2, as amended, Act of Dec. 20, 1982,. P.L. 1409, No. 326, Art. II, § 201. Nowhere in this section are the courts of this Commonwealth granted the power to impose the punishment of civil contempt for disobedience or neglect of the process of administrative agencies. In instances where like sanctions are deemed appropriate for such disobedience or neglect, the legislature either has authorized a court to *proceed as for* civil contempt (as was attempted with Section 7), or has specifically *granted jurisdiction* to the courts to punish for contempt, *see e.g.*, Administrative Code § 520, 71 P.S. § 200. Any authority which the courts of this Commonwealth have to treat disobedience of agency subpoenas as contempt comes, and must come, from the Acts of the General Assembly. It approaches the realm of fantasy to maintain that rules adopted for that purpose by this Court neither abridge the rights of those subpoened, enlarge the rights of the agency issuing the subpoena, nor determine the jurisdiction of any court.

The opinions echo the Commonwealth Court's concern that holding invalid the subpoena power would result in "[an] investigative commission without power to investigate," 84 Pa.Cmwlth. at 240, 479 A.2d at 658–59. As a practical matter, the restriction on the Commission's investigative power is limited to those circumstances where testimony is sought to be compelled. However limited this power might seem compared to the sweeping powers desired by the Commission, it is nevertheless sufficient to allow the Commission to fulfill its statutory function, see, 71 P.S. § 1190.4, which is, essentially, only advisory to the Judiciary Committees of the Senate and the House of Representatives. Should the General Assembly deem it necessary for the Commission to have subpoena power to more effectively pursue its statutory duty, such can be readily accomplished by enactment of appropriate legislation which comports with constitutional requirements. This Court demeans itself by abusing its powers in order to clean up after the legislature and rectify legislation which contravenes the Constitution.

I would reverse the Order of the Commonwealth Court and find the subpoenas issued by the Commission to be unenforceable.