512 Pa. 496 (1986)
517 A.2d 949
In re SUBPOENA Served by the Pennsylvania Crime Commission ON the JUDICIAL INQUIRY AND REVIEW BOARD, Dated June 7, 1983, Number 83194.
In re PETITION FOR ENFORCEMENT OF A SUBPOENA TO the PENNSYLVANIA JUDICIAL INQUIRY AND REVIEW BOARD.
Supreme Court of Pennsylvania.
Argued May 13, 1986.
Decided November 19, 1986.
*497 *498 Donald E. Johnson, Chief Counsel, Pa. Crime Comm'n, St. Davids, G. Alan Bailey, Norristown, for petitioner.
Marion E. MacIntyre, Deputy Executive Atty. Gen., Harrisburg, Perry S. Bechtle, Philadelphia, for respondent.
Before NIX, C.J., and FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

OPINION
ZAPPALA, Justice.
The Pennsylvania Crime Commission has petitioned the Court pursuant to Pennsylvania Rule of Appellate Procedure 3331(a)(5) for review of an order of the Commonwealth Court refusing to enforce a subpoena issued by the Commission and served on the Judicial Inquiry and Review Board. We have jurisdiction of this matter under 42 Pa. C.S. § 723(a).
The parties have stipulated to certain facts relevant in assessing the competing legal claims. Between May 8, 1983 and May 25, 1983, numerous articles and editorials appeared in The Philadelphia Inquirer, a general circulation newspaper, purporting to deal with an investigation of Supreme Court Justice Rolf Larsen by the Pennsylvania Judicial Inquiry and Review Board, and with the Board's sealing of the record of the investigation. These articles identified many high-ranking public officials and candidates for public office as witnesses before the Board, and contained what were represented to be verbatim transcripts of substantial portions of their testimony. (Stipulations of Fact 9-11).
According to Commissioner Alvin B. Lewis, who testified in the court below, the Pennsylvania Crime Commission took note of the information contained in the alleged verbatim transcripts published in these articles and decided by formal resolution that an investigation of possible "public corruption" was warranted.
On June 7, 1983, the Commission issued a subpoena to the Board which was served on the Board's Executive Director, *499 Richard E. McDevitt, on June 13, 1983. The subpoena, returnable on June 28, 1983, called for "the entire record of all proceedings including, but not limited to, testimonial transcripts and documents of The Judicial Inquiry and Review Board's investigation and hearings in the matter of Justice Rolf Larsen." (Stipulations of Fact 1, 4, 7, 8).
In the Commonwealth Court, the Board filed a motion to quash the subpoena and the Commission filed a petition to enforce the subpoena. After several hearings, the court denied the enforcement petition and granted the motion to quash, holding that the confidentiality of the Board's proceedings is not a qualified privilege, but "can only fall when the record of Board proceedings is accompanied by a recommendation [to the Supreme Court] for censure and at no other time." In Re: Subpoena to Judicial Inquiry and Review Board, 79 Pa.Cmwlth. 375, 391, 470 A.2d 1048, 1055 (1983).[1]
In asking this Court to reverse the Commonwealth Court's order denying enforcement of its subpoena, the Commission, while acknowledging the constitutional basis of the Board's privilege of confidentiality, argues that the court below interpreted that privilege too expansively. The Pennsylvania Constitution provides as follows:
(g) If, after hearing, the board finds good cause therefor, it shall recommend to the Supreme Court the suspension, *500 removal, discipline or compulsory retirement of the justice or judge.
(h) The Supreme Court shall review the record of the board's proceedings on the law and facts and may permit the introduction of additional evidence. It shall order suspension, removal, discipline or compulsory retirement, or wholly reject the recommendation, as it finds just and proper. . . . All papers filed with and proceedings before the board shall be confidential but upon being filed by the board in the Supreme Court, the record shall lose its confidential character. . . .
Pa. Const. Art. V, § 18(g), (h) (emphasis added).
The Commission first analyzes the language of the constitution, arguing that nowhere is there a prohibition preventing the Board from filing any or all of its records with the Court regardless of whether they contain recommendations of punitive measures. According to the Commission the Constitution provides only that the Board must file its record when it does recommend discipline; it is silent as to whether the Board may file its record when no disciplinary recommendation is found appropriate. The final step in this argument is that since the Board may in its discretion file its record with the Court, and the continuing confidentiality of the record is dependent only on whether it does file the record, the Board's discretion, and not a constitutional mandate, is the only support for the claim of confidential privilege.
In support of this argument the Commission cites the past practice of the Board in filing a record of the proceedings with the Supreme Court upon the completion of the Board's consideration of a matter, whether or not a recommendation of discipline was made, a practice acknowledged by the Board in its Answer to a Complaint filed in the United States District Court for the Eastern District of Pennsylvania. See The First Amendment Coalition v. *501 Judicial Inquiry and Review Board, 579 F.Supp. 192 (1984), vacated and remanded, 784 F.2d 467 (3d Cir.1986).[2]
Whatever the prior practice of the Board may have been, the short answer to this strained reading between the lines of the Constitution is that this Court has already rejected an almost identical argument.
The authority conferred on this Court by subsection (h) to "order suspension, removal, discipline or compulsory retirement, or wholly reject the recommendation" is the only dispositional authority granted to this Court by Article V, section 18 of the Pennsylvania Constitution, and is of course dependent upon the existence of a Board recommendation of action in the first place. If, as in the present matter, a majority of the Board determines that suspension is not warranted, there is no recommendation of action for the Board to make and thus no constitutional authority for this Court to review the record and act. The matter is constitutionally closed.
First Amendment Coalition v. Judicial Inquiry and Review Board, 501 Pa. 129, 132-33, 460 A.2d 722, 724 (1983) (emphasis added). It is true that the First Amendment Coalition case and the companion case In the Matter of Petition of the Pennsylvania Bar Association, 501 Pa. 127, 460 A.2d 721 (1983), turned on whether this Court had authority to assume jurisdiction over a disciplinary proceeding before the Board or otherwise compel the Board to file its record in the Court so that we might undertake further review. This difference is of no significance, however, because the basis for the decisions in those cases, the constitutionally established structure of the relationship between the Board and the Court, requires the same result here. The Board is an independent body. Its only contact with the Court, aside from the power of the Court to appoint certain of its members and to prescribe rules of procedure, is the recommendation of disciplinary action accompanied by the filing of the record of the proceedings *502 leading to that recommendation. Absent a recommendation for the Court to act the Board presents no matter or proceeding for the Court's consideration. We know of no basis for a party to file, or for the Court to accept for filing, documents on which no action may be taken. The Court is not a clearing-house or depository for public documents related to the functioning of the judiciary.
The Commission next argues that the privilege of confidentiality granted to the Board in the Constitution is not absolute but must be viewed in light of its purposes, giving way when those purposes can no longer be served. The Commission looks to a United States Supreme Court case, Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978) for a summary of the purposes supporting the confidential status of records of judicial disciplinary boards. These are
encouraging the filing of complaints and the voluntary participation of witnesses by providing protection against reprisal or recrimination; protects [sic] judges from the injury which could result from publication of unexamined and unwarranted complaints; and, maintains [sic] confidence in the judiciary as an institution by preventing the premature announcement of groundless claims of judicial misconduct or disability.
Petitioner's Brief at 18-19, paraphrasing Landmark Communications, 435 U.S. at 835, 98 S.Ct. at 1539.
In the context of the present case, the Commission contends that none of these purposes is served by continued confidentiality of the Board's records. In fact, it is argued, disclosure of the records would better serve some of these interests. The Commission observes that according to the Rules of Procedure governing matters before the Board, once an investigation has proceeded beyond the preliminary stage, the judge in question must be notified of the complaint and the identity of the complainant. The judge may also attend all proceedings, where he would have the opportunity to become aware of the identity of other witnesses. Where, as here, all proceedings before the Board have been *503 completed, there is said to be no further need to protect the complainant and other witnesses against reprisal.
As for the protection of a subject judge from publicity surrounding unfounded complaints, it is argued that this rationale for keeping Board proceedings confidential is no longer meaningful after the time when frivolous complaints are separated from meritorious ones. Once the Board has found cause to proceed beyond a preliminary investigation to a formal hearing, the complaint can no longer be viewed as "unfounded", even if the charges ultimately are disproved. The publication of purported excerpts from the proceedings in the case at bar, is said to further undermine this reason for continued confidentiality. Indeed the reason is argued to be better served by disclosure of the full record, to counter possible misconceptions caused by the incompleteness and potential inaccuracy of the excerpts published.
Finally, it is likewise argued that concern for public confidence in the judiciary as an institution is no longer a reason for barring disclosure of disciplinary proceedings once it has been determined that the claims are not groundless. It is further argued that the Board's insistence on keeping its records confidential, in the face of published reports on some testimony indicating judicial misconduct, has itself generated public concern, suspicion, and distrust. According to this argument release of the full body of information leading to exoneration would further the goal of maintaining public confidence in the judiciary, whereas continued secrecy can only frustrate that goal and perpetuate destructive suspicion founded on ill-informed rumor.
We need not address whether these assumptions about the rationale for the confidentiality rule are complete or valid because while these arguments may be appealing statements of policy in the abstract, they bear little relation to the law to be applied in this case. This Court may not routinely examine the purposes and policies underlying the law as enunciated in the Constitution to determine whether that law should be applied or not. It is only when a *504 constitutional precept contends with a precept of equal or greater authority that such an analysis becomes appropriate. Then it devolves upon the Court to discern which should control the facts presented, by, among other things, assessing the purposes and policies underlying each. The Commission here asks us to set the express constitutional mandate of confidentiality against its own supporting rationale. Were we presented with a rule of law developed in the courts, we would of course be acting in the best spirit of the common law tradition in testing the rule against its reason. The requirement of confidentiality of Board proceedings, however, was established by the people of the Commonwealth as a constitutional rule of law and must be enforced as written until it is either amended or repealed by the appropriate constitutional process. We may no more refuse to apply this provision because it might appear to some to be no longer wise or purposeful than we might ignore the speech and debate privilege of members of the General Assembly found in Article 2, Section 15, or the right of individuals not to be compelled to give evidence against themselves, established in Article 1, Section 9. All are equally established in the fundamental statement of the law of the Commonwealth and all must be equally respected.
Similar reasoning requires us to reject the Commission's third argument in support of its right to obtain the Board's records by subpoena. The Commission claims that the public interest in the effective administration of criminal justice requires the privilege of confidentiality to yield. In support of this claim the Commission cites numerous cases, both state and federal, in which courts have recognized exceptions to common law, statutory, and constitutional privileges. Only by overstating the breadth of the holdings in these cases, however, can the Commission bring this case within their authority.
Illustrative of the flaw in the Commission's reasoning is the citation to United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). In that case the United *505 States Supreme Court recognized a privilege of confidentiality, of constitutional dimensions, regarding communications between the President and his advisers, but held that the privilege could not prevail over the "fundamental demands of due process of law" in the context of a criminal prosecution. 418 U.S. at 713, 94 S.Ct. at 3110 (emphasis added). The Commission characterizes the case as striking a balance "between a generalized interest in confidentiality and a more specific compelling interest in the need for evidence in a criminal matter." (Brief at 29) (emphasis added). It is of great significance, however, that the question of the limits on executive privilege arose in the context of a criminal trial, the privilege having been asserted in response to a subpoena for documents necessary for a prosecution of indicted defendants. Identifying the privilege as being constitutionally based, the Court observed that "the right to the production of all evidence at a criminal trial similarly has constitutional dimensions," citing the Sixth Amendment rights of confrontation and compulsory process, and the Fifth Amendment due process right. Id. at 711, 94 S.Ct. at 3109. The Court further noted
[w]e are not here concerned with the balance between the President's generalized interest in confidentiality and the need for relevant evidence in civil litigation, nor with that between the confidentiality interest and congressional demands for information. . . . We address only the conflict between the President's assertion of a generalized privilege of confidentiality and the constitutional need for relevant evidence in criminal trials.

Id. at 712 n. 19, 94 S.Ct. at 3109 n. 19 (emphasis added).
Other cases cited by the Commission present similar conflicts between constitutionally protected interests. See, e.g., People ex rel. Illinois Judicial Inquiry Board v. Hartel, 72 Ill.2d 225, 20 Ill.Dec. 592, 380 N.E.2d 801 (Ill. 1978) (state constitution's requirement of confidentiality in judicial disciplinary proceedings must be implemented except as overriding Federal due process requirements compel otherwise); Forbes v. Earle, 298 So.2d 1 (Fla.1974) (state *506 constitution's requirement of confidentiality in judicial proceedings could yield to properly authorized legislative request in context of constitutional impeachment proceedings).
The Commission does not argue  because it cannot  that the Board's confidentiality established in the state constitution must yield to a right or interest preserved in a specific provision of the Federal constitution or the state constitution. Rather the Commission attempts to broaden the holdings of the cases cited by claiming that they recognize a pre-eminent generalized "legitimate state interest in conducting law enforcement efforts." The Commission thus arrogates to itself a status significantly greater than that to which it is entitled.
The Pennsylvania Crime Commission as presently constituted was created by the Act of October 4, 1978, P.L. 876, as amended, 71 P.S. §§ 1190.1-1190.11. Accordingly it may exercise only those powers and perform only those duties specifically granted by the General Assembly. Among those powers and duties are:
(2) To inquire into public corruption and the activities of persons engaged in and associated with public corruption.
(3) To make a detailed written report of every completed investigation which may include recommendation for legislative or administrative action.
. . . .
(6) Through its chairman, to call upon the department heads of State Government and State Agencies for such information and assistance as is needed to carry out the functions of the commission.
(7) To require the attendance and testimony of witnesses and the production of documentary evidence relative to any investigation which the commission may conduct in accordance with the powers given it
. . . .

*507 (11) To perform such other acts as are necessary for the proper functioning of the commission.
71 P.S. § 1190.4.
By this time it should go without saying that the Commission is merely an investigative body, without authority to prosecute anyone, having the function of making recommendations for legislative or administrative action. Pennsylvania Crime Commission Subpoena, 453 Pa. 513, 309 A.2d 401 (1973); Pennsylvania Crime Commission v. Nacrelli, 5 Pa.Cmwlth. 551 (1972); 71 P.S. § 1190.4(3). Although by the nature of the subject matter of its grant of authority the Commission may come under the umbrella concept of the state's "interest in conducting law enforcement efforts," it is by no means the equal of other interests under that umbrella such as a grand jury, or a prosecutor, or even a criminal defendant seeking access to information for use at trial. Stripped to its most basic elements this case presents a conflict between a constitutionally based privilege and a general statutory right of access.[3] In the framework of our governmental system it is clear that the constitutional rule of law is more fundamental and must prevail.
Finally, the Commission complains that several options, suggested by the court below in lieu of obtaining the Board's records, are inadequate for the Commission's investigative requirements. The court suggested that the Commission might (a), report its findings to the Legislature along with recommended actions for statutory or constitutional changes; (b), conduct its own investigation and report to the Board with recommendations for further Board action or administrative relief; or (c), report its findings to the Attorney General or other appropriate prosecutor for further *508 action. The Commission argues here that the first and last of these options are meaningless because without the record of the hearings before the Board, there can be no further investigation and thus no findings to report. The second option is said to miss the mark of the Commission's purpose in conducting this investigation. The Commission points out that it is pursuing an investigation into public corruption in the hearings before the Board, not investigating charges of judicial misconduct. The Board record is argued to be the best evidence for the former purpose, while a separate inquiry into the same allegations pursued by the Board would be outside the scope of the Commission's investigation.
The Commission's claim that "[t]he only possible avenue available for the Commission to pursue is to obtain the record of the Board's proceedings to examine what certain persons said and did during those proceedings" (Brief at 42) rings hollow. In view of the fact that the Commission need not meet any burden of proof as would a prosecutor trying a case, but need only prepare a report of its findings and recommendations, any evidence which the Commission can obtain through its own investigation can serve a purpose. The Commission errs in assuming that it cannot fulfill its duties without ferreting out all evidence before reporting to the Legislature or executive agencies. Even if the "best evidence" is unavailable, and the evidence which is available would not suffice to sustain criminal charges, the investigative/reporting function of the Commission can be served. In this regard we observe that the Commission already has access to what are purported to be substantial portions of verbatim transcripts of the Board proceedings from the Philadelphia Inquirer. Though not the "best evidence" of the matter under investigation, these transcripts and others which might be obtainable from the Inquirer, along with other evidence the Commission might gather through independent investigation, could nevertheless be the basis of a meaningful report for other appropriate governmental units to act upon.
*509 Because the Commonwealth Court correctly refused enforcement of the subpoena, its Order will be affirmed.
It is so ordered.
NIX, C.J., and FLAHERTY, J., did not participate in the decision of this case.
LARSEN, J., did not participate in the consideration or decision of this case.
NOTES
[1] The Commission argues that the court erred in both granting the motion to quash filed before any enforcement action was taken, and denying the petition for enforcement of the subpoena. Because the matters were consolidated for hearing and decision, the court unquestionably had jurisdiction to determine the validity of the subpoena. Therefore we need not decide the Commission's argument that the court could not properly have quashed the subpoena in the absence of a petition for enforcement, Pennsylvania Crime Commission Subpoena, 453 Pa. 513, 309 A.2d 401 (1973), or the Board's response that the extraordinary subpoena enforcement power granted the Commission in 71 P.S. § 1190.7 require an exception to the rule of that case. But see, In re Petition for Enforcement of Subpoenas to John Doe Corporations A, B, C, D and E, 507 Pa. 137, 489 A.2d 182 (1985) (unconstitutional enforcement power of 71 P.S. § 1190.7 suspended. Administrative Code Section 520, 71 P.S. § 200, adopted as interim procedure).
[2] This practice was later abandoned by the Board, on advice of counsel, as not being constitutionally authorized.
[3] It is to be noted that the General Assembly has granted the Commission a right of access to otherwise confidential information in possession of Commonwealth agencies by way of petition to the Commonwealth Court rather than subpoena, 42 Pa.C.S. § 8721-8725. The Judicial Inquiry and Review Board is, by definition, not among the agencies to which this right of access extends, see 42 Pa.C.S. § 102, nor could it be so extended to abrogate the Board's constitutional requirement of confidentiality by statutory enactment.