41 A.3d 816

Michael L. FAGAN, Michael Hoffman, D. Gregory Holt, Susan R. Kerr, Ralanda King, Aamir Moore, Claudia S. Sherrod, Patricia Smeck, Robert S. Smith, Jeremy Winch, and Naomi Winch, Petitioners

v.

Samuel H. SMITH, in his capacity as Speaker of the Pennsylvania House of Representatives, and Carol Aichele, in her capacity as Secretary of the Commonwealth of Pennsylvania, Respondents.

Supreme Court of Pennsylvania.

Feb. 29, 2012.

88

Kevin Michael Greenberg, Nella Moses Bloom, Flaster/Greenberg, P.C., Philadelphia, for petitioner.

Matthew Hermann Haverstick, Robert N. Feltoon, James J. Rohn, Francesco P. Trapani, Conrad O'Brien, P.C., Philadelphia, for respondent, Speaker of the House of Representatives.

Steven Vincent Turner, Shauna Christine Clemmer, PA Department of State, Jarad Wade Handelman, PA Governor's

Office, Kathleen Marie Kotula, PA Department of State, Harrisburg, for respondent, Secretary of the Commonwealth.

## *ORDER*

PER CURIAM.

AND NOW, this 29th day of February 2012, upon consideration of the emergency request and the responsive pleadings, we **GRANT** Petitioners' alternative request that this Court exercise its King's Bench jurisdiction over this matter. It is hereby **ORDERED** that the request for mandamus relief is **GRANTED IN PART.** Specifically, the Honorable Samuel H. Smith, Speaker of the Pennsylvania House of Representatives, is hereby **ORDERED** to issue forthwith writs of election for special elections to fill the vacancies in the House of Representatives, Legislative Districts 22, 134, 153, 169, 186, and 197. The special elections shall be held to fill the enumerated vacancies "for the remainder of the [2010–2012] term," the two-year term for which members were elected at the November 2010 general election. PA. CONST. art. II, §§ 2, 3; *see* PA. CONST. art. II, § 4 ("The General Assembly shall be a continuing body during the term for which its Representatives are elected."). The special elections shall be held to coincide with the next ensuing primary election.[1]

The writ of mandamus exists to compel official performance of a ministerial act or mandatory duty. *See Delaware River Port Auth. v. Thornburgh,* 508 Pa. 11, 493 A.2d 1351, 1355 (1985). Mandamus cannot issue "to compel performance of a discretionary act or to govern the manner of performing [the] required act." *Volunteer Firemen's Relief Ass'n of City of Reading v. Minehart,* 415 Pa. 305, 203 A.2d 476, 479 (1964). This Court may issue a writ of mandamus where the petitioners have a clear legal right, the responding public official has a corresponding duty, and no other adequate and appropriate remedy at law exists. *Id.; see Board of Revision of Taxes v. City of Philadelphia,* 607 Pa. 104, 4 A.3d

1. The 2012 primary election is currently scheduled for April 24, 2012, and the General Assembly has not rescheduled it.

610, 627 (2010). Moreover, mandamus is proper to compel the performance of official duties whose scope is defined as a result of the mandamus action litigation. *Thornburgh*, 493 A.2d at 1355. Thus, "we have held that mandamus will lie to compel action by an official where his refusal to act in the requested way stems from his erroneous interpretation of the law." *Minehart*, 203 A.2d at 479–80.

We find that petitioners here have met their burden and are entitled to a writ of mandamus ordering Speaker Smith to issue writs of election for special elections to fill the currently vacant seats in the House of Representatives, to wit, Legislative Districts 22, 134, 153, 169, 186, and 197. The right at issue is the fundamental right to representation in these House districts. *See Reynolds v. Sims*, 377 U.S. 533, 566, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) ("the Equal Protection Clause guarantees the opportunity for equal participation by all voters in the election of state legislators."). Petitioners, voters in the enumerated districts, have demonstrated that they have a clear legal right to elected representation, which right must be vindicated at special elections. PA. CONST. art. I, § 5 ("Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."). The Speaker of the House of Representatives, as its presiding officer, has a corresponding, nondiscretionary duty to issue writs of election for special elections to fill vacancies in the House of Representatives. PA. CONST. art. II, § 2 ("**Whenever** a vacancy shall occur in either House, the presiding officer thereof **shall** issue a writ of election to fill such vacancy for the remainder of the term.") (emphases added).

The Speaker does not dispute that his duty, as set forth in Section 2 of Article II, is mandatory, ministerial and nondiscretionary. Nor does the Speaker dispute that he was fully authorized to issue writs of election as soon as these vacancies arose in January. It is also undisputed that the next regularly scheduled election, following the vacancies, is the primary election currently scheduled for April 24, 2012. And, the Speaker does not dispute that he was empowered to issue

writs of election to ensure that these vacancies in the House were filled at that primary election. Accordingly, under the Constitution, the Speaker must issue the writs.

The Speaker's position in opposition depends upon a discretionary power allegedly conferred by Act 105 of 2001, 25 P.S. § 2778a, a recent amendment to the Election Code adopted during the last decennial redistricting process in 2001. (This Court has not yet had an opportunity to address Section 2778a.) Article If, Section 2 of the Constitution does not establish a specific time frame in which the presiding officer must act to discharge his ministerial duty to issue writs of election; albeit, use of the words "whenever" and "shall" convey that alacrity is required. Moreover, and notably, the Constitution does not repose any discretion in the presiding officer of either chamber to permit regularly scheduled elections to go by without issuing writs to fill vacant seats.[2] In contrast, the Election Code specifically addresses timing, and corroborates that the Constitution contemplates that writs should issue quickly. Thus, the Code generally requires the presiding officer of the affected legislative branch to act almost immediately to fill vacancies: within ten days of a vacancy, the presiding officer must "issue a writ of election to the proper county board or boards of election and to the Secretary of the Commonwealth, for a special election to fill

---

2. The reason the constitutional provision is framed in non-discretionary terms is not difficult to fathom. Although now essentially ministerial in nature, writs of election have a long history deriving from English common law regarding Parliamentary elections. Within that history, it is also apparent that the authority to issue writs of election has at times been ill-used. For example, during the Glorious Revolution—the rivalry between King James II and Parliament that ended in 1688 when the King fled the country and abdicated the throne—the King dismissed and dissolved Parliament, then withheld writs of election, which prevented the constitution of a new Parliament against him. The decline of the monarchy and lack thereof in the United States has minimized the potential influence of the writ of election, but it continues to play "the important administrative role of authorizing state officials to provide for the myriad details necessary for holding an election (printing ballots, locating voting places, securing election personnel, and so on)." *Judge v. Quinn*, 612 F.3d 537, 552 (7th Cir.2010) (exploring executive duty to issue writs of election in context of refusal of Illinois governor to issue writ of election for special election to fill United States Senate seat vacated by President–Elect Barack Obama).

said vacancy, which election shall be held at the next ensuing primary, municipal or general election scheduled at least sixty (60) days after the issuance of the writ. . . ." 25 P.S. § 2778.

In 2001, however, the General Assembly amended this provision and vested in the presiding officer (whether House or Senate) a discretionary power not to issue such writs whenever vacancies occur during the pendency of the adoption and finalization of a decennial reapportionment plan. Thus, Section 2778a of the Code provides that:

Whenever a vacancy shall occur in either house of the General Assembly on the same day as the filing of a preliminary reapportionment plan by the Legislative Reapportionment Commission or during the period between such filing and the date that a final plan attains the force of law, the presiding officer of the house shall have the authority, notwithstanding any other provisions of law to the contrary, to delay the issuance of a writ of election until ten days after the date the final plan attains the force of law.

25 P.S. § 2778a. The Speaker argues that this provision confers upon him a discretionary power to delay issuing writs of election indefinitely, until a final reapportionment plan has force of law. Under the statute, according to the Speaker, the mandatory and ministerial duty set forth in the Constitution is transformed into a discretionary, and potentially open-ended, duty in years where vacancies arise during the reapportionment process.

To the extent the Speaker reads this broad and open-ended discretionary power into Section 2778a, the provision obviously is in tension with the plain terms of the Constitution, and the statute would have to stand down. *See, e.g., Ieropoli v. AC&S Corp.,* 577 Pa. 138, 842 A.2d 919, 925, 928 (2004) ("[T]he fundamental rule of construction which guides us is that the Constitution's language controls and must be interpreted in its popular sense, as understood by the people when they voted on its adoption. . . . [a] statute will only be declared unconstitutional if it clearly, palpably and plainly violates the constitution."); *In re Subpoena on Judicial Inquiry and Review Bd.,* 512 Pa. 496, 517 A.2d 949, 955 (1986) ("In the framework of

our governmental system it is clear that the constitutional rule of law is more fundamental and must prevail."). We think that the statute, insofar as it applies to the Pennsylvania House of Representatives, may be, and properly should be, construed in a narrower sense that avoids this obvious constitutional tension. *See In re F.C. III,* 607 Pa. 45, 2 A.3d 1201, 1214 (2010) ("[C]ourts have the duty to avoid constitutional difficulties, if possible, by construing statutes in a constitutional manner.").

Decennial reapportionment may have obvious and immediate disruptive consequences for the Pennsylvania Senate, since the four-year terms of office in the Senate are staggered. A reapportionment plan may affect existing senatorial districts that are not on the ballot in the year the new plan is adopted. In theory, a vacancy could occur in a district that has been altered, moved, or eliminated. *See Donatelli v. Casey,* 826 F.Supp. 131, 135–36 (E.D.Pa.1993), *aff'd, Donatelli v. Mitchell,* 2 F.3d 508 (3d Cir.1993) (substantial population shift from western part of state to eastern part of state justified movement of senatorial district 250 miles east under reapportionment plan). There is some salutary value in authorizing the presiding officer of the Senate to await the outcome of the redistricting process before determining to issue writs for election. Indeed, in certain instances (but not all), the Senate's presiding officer may not know the contours of the district in which the election should be held.

Such is simply not the case with the House. Every Pennsylvania House seat is voted upon every two years. A new reapportionment plan, once final, takes effect at the next ensuing primary and general election; it does not operate retroactively to remake the districts of sitting House members for the remainder of their terms; it simply does not disrupt existing terms. Thus, unlike his presiding officer counterpart in the Senate, the Speaker of the House does not need to abide the outcome of a redistricting plan to know where to schedule the special elections the Constitution requires him to call, in order to fill vacancies for the remainder of these two-year terms. In short, there is no apparent reason why the

constitutionally mandated, ministerial duty to issue writs of election to fill vacant House seats can or should be deferred pending the outcome of the reapportionment process.

The district boundaries for the six vacant seats at issue here were set in the 2001 Final Reapportionment Plan, and the new members who would be elected to serve the remainder of their terms will merely step into the shoes of their predecessors— just as the Speaker and every other sitting House member who is currently seated under the districts set forth in the 2001 redistricting map. While the 2011 Legislative Reapportionment Commission continues its work on a new reapportionment plan going forward, there is no question about what districts are involved here; they are the six districts whose seats have been vacant since January 2012. The 2011 reapportionment otherwise mandated by our Constitution, *see* PA. CONST. art. II, § 17, does not affect distribution of representatives for the 2010–2012 term of the House of Representatives, either by incumbent members or by specially elected members of that body.

█ Mindful of the salutary duty to avoid constitutional tension where possible, the better interpretation of Section 2778a, as it concerns the Pennsylvania House at least, is that the Speaker is authorized to await the initial outcome of the reapportionment process in order to see if the primary—the next scheduled election following a timely reapportionment plan—is delayed. This narrower construction is consistent with the position of petitioners, who do not allege that the Speaker was required to schedule special elections in advance of the primary, and it avoids a potential conflict with the Speaker's clear, non-discretionary, ministerial duty under the Constitution. The contrary construction offered by the Speaker eviscerates the constitutional provision, requiring citizens to go unrepresented while a reapportionment process, having nothing to do with the identity of the vacant seats in the House, is completed.

Under this narrower construction, in the wake of this Court's decision in *Holt v. 2011 Legislative Reapportionment*

*Comm'n,* 614 Pa. 364, 38 A.3d 711 (2012), the federal court's decision in *Pileggi v. Aichele,* —— F.Supp.2d —— (E.D.Pa. 2012), and the fact that the 2012 Pennsylvania primary is proceeding as scheduled at the time of this decision, there is simply no basis upon which the Speaker can refuse to perform his ministerial duty under the Constitution to issue the required writs of election. Indeed, even if the date of the primary had been affected by the reapportionment process, the reapportionment decision put the Speaker upon certain notice that he had to issue the writs of election.

■ The relief sought is mandamus. The discretion purportedly conferred in the limited exception codified in Section 2778a does not justify the Speaker's failure to abide by his non-discretionary ministerial duty under the Constitution to "issue a writ of election to fill such vacancy for the remainder of the term" "[w]henever a vacancy shall occur" in the House. In the face of the specific challenge forwarded, we will construe Section 2778a in a fashion that does not conflict with this clear constitutional mandate. Accordingly, we hold that the statutory latitude afforded the Speaker in a redistricting year expires once a date certain for the primary is established. As stated, we may properly use mandamus "to compel action by an official where his refusal to act in the requested way stems from his erroneous interpretation of the law." *Minehart,* 203 A.2d at 479–80. We do not doubt the good faith of the Speaker in relying upon Section 2778a, but we hold that the clear language of the Constitution requires mandamus relief. Absent an order of this Court granting the writ of mandamus, no adequate or appropriate remedy at law exists to protect the exercise of the franchise and the clear constitutional right of electoral representation until the next scheduled general election. *Id.; see Board of Rev. of Taxes,* 4 A.3d at 627 (writ of mandamus proper where petitioners have clear legal right, responding public official has corresponding duty, and no other adequate and appropriate remedy at law exists).

We recognize that Section 2778 contemplates that a special election not occur less than sixty days after issuance of a writ of election, and that this *per curiam* order, of necessity, is

issuing less than sixty days prior to the scheduled primary elections, with which the special elections must now coincide. Therefore, the Secretary of the Commonwealth is hereby authorized to adjust the election procedure timeline as necessary, in order to permit the special elections to proceed on April 24, 2012.[3]

Mandamus granted. Jurisdiction is relinquished.

Justice SAYLOR files a Dissenting Statement which is joined by Justices EAKIN and ORIE MELVIN.

Justice EAKIN files a Dissenting Statement, which is joined by Justice ORIE MELVIN.

Justice SAYLOR, dissenting.

I agree with the Speaker that, under the plain terms of Section 2778a of Title 25, Pennsylvania Statutes, he is afforded discretion to defer issuing writs of election pending final implementation of a legislative reapportionment plan. *See* 25 P.S. § 2778a. I respectfully differ with the majority's narrower construction of this provision, as I find it to be in conflict with the statutory language.

The majority justifies its approach under the presumption that the Legislature intends to act within constitutional constraints. *See* Order, at 5–6. However, I am not convinced that Section 2778a, read according to its straightforward terms, is unconstitutional, nor do I regard it as the Court's role to recast statutes which it may view with suspicion. *Cf. Housing Auth. of Chester Cnty. v. CSC*, 556 Pa. 621, 644, 730 A.2d 935, 948 (1999) ("While we strive to interpret statutes in a manner which avoids constitutional questions, we will not ignore the plain meaning of the statute to do so.").

As an unavoidable consequence of the Court's recent decision in *Holt v. 2011 Legislative Reapportionment Commission*, much uncertainty attends this year's election processes.

**3.** Additionally, we grant petitioners' request to file a response; we have considered both that response and Speaker Smith's subsequently filed surreply. Furthermore, we deny Secretary Aichele's new matter seeking dismissal from this case.

While it may seem clear enough, at this juncture, that the April 24 primary elections will go forward within existing voting district boundaries—and, thus, that it may be prudent for the Speaker to issue writs so vacancies may be promptly addressed—the statutory scheme vests discretion with the Speaker to determine the appropriate timing of special elections in redistricting cycles. Significantly, it is this fundamental, discretionary character of the salient decision which should control the outcome of the present petition, since the requested remedy (mandamus) is appropriate to compel ministerial actions but not to direct the terms of discretionary ones. *See, e.g., Safe Harbor Water Power Corp. v. Fajt*, 583 Pa. 234, 260, 876 A.2d 954, 970 (2005) (explaining that "mandamus relief will lie only to compel performance of a required act, but does not lie to compel a discretionary act").

Given the present legal landscape, particularly the absence of a properly asserted constitutional challenge to Section 2778a, I conclude that mandamus should not lie to preclude the Speaker from proceeding in accordance with the express terms of such statute.

Justices EAKIN and ORIE MELVIN join this Dissenting Statement.

Justice EAKIN, dissenting.

I join the dissenting statement of Justice Saylor.

The majority suggests § 2778a must yield to the Constitution, and indeed all statutes must. However, there has been no constitutional challenge to this statute. This is a mandamus request, suggesting the Constitution impliedly requires immediate action by the Speaker.

The act of setting elections is not discretionary—I agree with the majority on this point—but that does not equate to holding there is no discretion in when the act must be accomplished. The Constitution is silent on the matter of when the act must be accomplished—in the absence of a requirement of immediate action, it requires action within a reasonable time. What is reasonable of course depends on the specific situation,

and here, the situation is not one the framers were likely to have considered.

The statute recognizes that when districts are realigned, timetables are necessarily changed; when an anticipated realignment is successfully challenged in court, the timetable is even further askew. I find the statute to be a reasonable, and not unconstitutional, effort to address an unfortunate situation.

As Justice Saylor notes, we are not presented with a properly framed constitutional challenge to a statute. We are asked for mandamus relief. As the statute vests discretion in the Speaker under the present circumstances, mandamus is inappropriate. Hence, I dissent.

Justice ORIE MELVIN joins this Dissenting Statement.